T.C. Memo. 1995-551

UNITED STATES TAX COURT

JOHN P. CROWLEY AND ELIZABETH R. COCKRELL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket Nos. 28826-84, 7746-87. Filed November 20, 1995.

Stanley M. Klein and Michael J. Weitzner, for
petitioner John P. Crowley in docket No. 28826-84.

Alan J. Garfunkel, Marc S. Orlofsky, and Edward Rubin, for
petitioner Elizabeth R. Cockrell in docket Nos. 28826-84 and
7746-87.

Drita Tonuzi and Henry S. Schneiderman, for respondent.

---

[*]

This Supplemental Memorandum Opinion supplements our prior
Memorandum Opinion in the instant case, Crowley v. Commissioner,
T.C. Memo. 1993-503, filed November 1, 1993.

SUPPLEMENTAL MEMORANDUM OPINION

WELLS, <u>Judge</u>:  These cases[1] are before us on petitioner Elizabeth R. Cockrell's[2] motion pursuant to Rule 161[3] for reconsideration of <u>Crowley v. Commissioner</u>, T.C. Memo. 1993-503 (prior Opinion).  In our prior Opinion, we held, inter alia, that petitioner was not entitled to relief under section 6013(e) as an innocent spouse from the understatements of tax for her taxable years 1980 and 1981 attributable to deductions claimed for losses incurred by Mr. Crowley in connection with certain commodities straddle transactions.  That holding was based on petitioner's failure to prove that such understatements of tax were attributable to "grossly erroneously items" pursuant to section 6013(e)(2)(B).[4]

---

[1]

These cases (for convenience, hereinafter referred to as the instant case) have been consolidated for trial, briefing, and opinion.

[2]

As petitioner John P. Crowley has settled all issues in the instant case with respect to himself, hereinafter we will refer to Elizabeth R. Cockrell as "petitioner" and John P. Crowley as Mr. Crowley.

[3]

Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the years in issue.

[4]

Because the requirements for relief as an innocent spouse under sec. 6013(e) are conjunctive, <u>Bokum v. Commissioner</u>, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993), our

(continued...)

## Background

In her motion, as supplemented, petitioner requests, inter alia, that we reconsider our prior Opinion and either decide that she qualifies for relief as an innocent spouse based on the evidence already in the record or reopen the record to allow introduction of additional evidence in support of her claim that she qualifies for relief as an innocent spouse. Petitioner's requests are based on the following contentions: (1) That newly available evidence establishes that the deductions in issue are "grossly erroneous items" within the meaning of section 6013(e)(2); (2) that respondent's counsel at the trial of the instant case violated Rule 201 and rule 3.3(a)(3) of the Model Rules of Professional Conduct (Model Rules) in not disclosing certain information petitioner alleges is relevant to that question; and (3) that petitioner is entitled to relief as an innocent spouse pursuant to the transitional rule of section 6004 of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA),

---

[4](...continued)
holding that such deductions were not attributable to "grossly erroneous items" rendered it unnecessary for us to decide whether petitioner satisfied the other requirements of that subsection that were contested by petitioner and respondent (viz: (1) In signing the returns in issue petitioner did not know and had no reason to know of the existence of the understatements in issue and (2) it would be inequitable to hold petitioner liable for the deficiencies resulting from those understatements).

Pub. L. 100-647, 102 Stat. 3685-3686 (transitional rule).[5]

---

[5]

The transitional rule provides as follows:

Sec. 6004.   TREATMENT OF CERTAIN INNOCENT SPOUSES

Subsection (c) of section 424 of the Tax Reform Act of 1984 (relating to innocent spouse relieved of liability in certain cases) is amended by adding at the end thereof the following new paragraph:

"(3) Transitional Rule.--If--

"(A) a joint return under section 6013 of the Internal Revenue Code of 1954 was filed before January 1, 1985,

"(B) on such return there is an understatement (as defined in section 6661(b)(2)(A) of such Code) which is attributable to disallowed deductions attributable to activities of one spouse,

"(C) the amount of such disallowed deductions exceeds the taxable income shown on such return,

"(D) without regard to any determination before October 21, 1988, the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement, and

"(E) the marriage between such spouses terminated and immediately after such termination the net worth of the other spouse was less than $10,000,

notwithstanding any law or rule of law (including res judicata), the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement, and, to the extent the liability so attributable has been collected from such other spouse, it shall be refunded or credited to such other spouse.  No credit or refund shall be made under the preceding sentence unless claim therefor has been submitted to the Secretary of the Treasury or his delegate before the date 1 year after
(continued...)

Although we incorporate into this Opinion by reference the findings of fact in our prior Opinion, we restate below certain of those findings that are relevant to the issues presented by petitioner's motion for reconsideration, and we further set forth certain supplementary findings of fact that were not set forth in our prior Opinion but are, however, based on the record of the trial of the instant case and relevant to our analysis below.

On November 14, 1979, petitioner and Mr. Crowley were married. At that time, petitioner was a Canadian citizen and Mr. Crowley was a U.S. citizen. They were married in a New York civil ceremony. On November 17, 1979, petitioner and Mr. Crowley were married a second time in a Canadian church. Prior to her marriage to Mr. Crowley, petitioner attended the University of Guelph, in Canada, where she received a bachelor of arts degree. From August 1977 until August 1979, petitioner worked in Canada as a life insurance agent first for Prudential Assurance and then Montreal Life Insurance.

Shortly after the marriage ceremony in Canada, petitioner and Mr. Crowley returned to New York. During 1980, petitioner worked for a photographer in New York City for 1 week in exchange for learning about photography. For 2 weeks, she solicited, by

---

[5](...continued)
the date of the enactment of this paragraph, and no interest on such credit or refund shall be allowed for any period before such date of enactment". [Emphasis added.]

telephone, on behalf of a messenger service located in New York City, for which she was compensated approximately $200.

During December 1980, petitioner was hired as a stockbroker trainee in New York. In order to prepare for the "series seven" stockbroker examination required for her employment, petitioner studied about stocks and bonds at home. Prior to passing the exam, petitioner answered the telephones for her employer. During the early part of 1981, petitioner passed the exam and obtained her stockbroker license. Subsequently, petitioner "cold-called" potential clients to sell them stocks and bonds. Neither petitioner's studies nor her work specifically included commodities tax straddles.

During the years in issue, Mr. Crowley was a partner in TSM Associates, Sinclair Securities Company, and APEX Associates, which were partnerships that had engaged in commodities straddle transactions involving Treasury bill options. Mr. Crowley, as an employee in James Sinclair Trading Corporation, arranged commodities straddle transactions for investors seeking "tax-sheltered investments".

Petitioner was aware of Mr. Crowley's position as a "commodities trader". Petitioner accompanied Mr. Crowley at several commodities seminars during which she "milled about" at the back of the room, "drifted" in and out of the seminar rooms, and socialized with other wives attending the seminars. Petitioner attempted to attract clients for her husband at the

hospitality suites provided by Mr. Crowley's employer after those seminars. Petitioner, however, did not discuss commodities straddle transactions during the seminars or in the hospitality suites.

When petitioner and Mr. Crowley were first married, they rented a one-bedroom apartment in Manhattan. During their marriage, petitioner and Mr. Crowley regularly entertained Mr. Crowley's clients at their apartment, and they frequently dined out at expensive restaurants in Manhattan. During 1980, Mr. Crowley and petitioner took vacations to Canada, Vermont, and Florida. Mr. Crowley's American Express bill for that year was approximately $90,000, and a substantial portion of that amount was charged by petitioner. During 1981, they moved to a two-bedroom apartment which they rented for approximately $1,400 or $1,500 per month and garaged Mr. Crowley's BMW automobile for approximately $250 to $300 per month. Subsequently, they rented a ranch house on Long Island.

During 1982, petitioner and Mr. Crowley decided to separate. After their separation, petitioner moved into a small loft apartment and paid the security deposit with $2,000 which Mr. Crowley had given her. On August 18, 1983, petitioner and Mr. Crowley were divorced.

On June 15, 1980, petitioner and Mr. Crowley signed a joint tax return for taxable year 1979, which was filed on June 24, 1980, and reported a negative adjusted gross income in the amount

of $71,312. During 1979, Mr. Crowley earned $81,925 in commissions from the James Sinclair Trading Corporation. On June 15, 1981, petitioner and Mr. Crowley signed a joint tax return for taxable year 1980, which was filed before the end of the month, and reported an adjusted gross income of $8,055 and tax due of $240. During 1980, Mr. Crowley earned $122,683 in commissions from Sinclair Securities Company. On January 26, 1983, petitioner and Mr. Crowley signed a joint tax return for taxable year 1981, which was filed on January 31, 1983,[6] and reported an adjusted gross income of $90,658 and tax due of $13,980. During 1981, Mr. Crowley earned $148,141 in commissions from Sinclair Securities Company. Petitioner signed the joint returns for 1979, 1980, and 1981 without reviewing them.

The losses disallowed in the notices of deficiency were claimed by petitioner and Mr. Crowley on their 1979, 1980, and 1981 joint tax returns as Mr. Crowley's share of losses incurred by TSM Associates, Sinclair Securities Company, and APEX Associates. During the years 1979, 1980, and 1981, Mr. Crowley earned more than $380,000 in commissions.

Petitioner and Mr. Crowley entered into a settlement agreement with respondent that provides that petitioner and Mr.

---

[6] Petitioner concedes that she is liable for the addition to tax for failure to file timely with respect to that return, unless she is relieved from such liability as an innocent spouse.

Crowley may deduct 20 percent of the losses attributable to the commodities straddle transactions for the years in issue, subject to petitioner's right to contest her liability for the taxes arising out of the settlement pursuant to section 6013(e). The settlement agreement contains standard settlement terms offered by respondent to all taxpayers involved in the Arbitrage Management tax shelter litigation project.

## Discussion

The decision to grant a motion for reconsideration rests within the discretion of the Court and such a motion will not be granted unless unusual circumstances or substantial error is shown. Vaughn v. Commissioner, 87 T.C. 164, 166-167 (1986). Moreover, it is our policy to try all of the issues raised in a case in one proceeding in order to avoid piecemeal and protracted litigation. Alexander v. Commissioner, 95 T.C. 467, 469 (1990).

Petitioner contends in her motion for reconsideration that we incorrectly held in our prior Opinion that the understatements in issue were not attributable to "grossly erroneous items". However, before deciding whether petitioner would be entitled to relief from liability as an innocent spouse if we were to accept that contention, we shall consider whether petitioner fails to satisfy any of the other requirements for innocent spouse relief

under section 6013(e) that were contested,[7] tried, and briefed by the parties but were not addressed in our prior Opinion. The present record in the instant case is sufficient for us to decide the other undecided requirements for innocent spouse relief under section 6013(e).[8] For the reasons set forth below, we conclude

---

[7] Respondent concedes that petitioner meets certain of the requirements for relief as an innocent spouse provided by sec. 6013(e).

[8] Petitioner requests that we reopen the record to permit her to introduce, inter alia, her transcript from the University of Guelph to show that she took no courses in any tax, business, or financial subject, majored in English, and was "an extremely indifferent student". Petitioner contends that, after the trial of the instant case, the Court of Appeals for the Second Circuit announced a requirement for innocent spouse relief that a taxpayer's education be taken into account in deciding whether the taxpayer knew or had reason to know of the existence of a substantial understatement under sec. 6013(e)(1)(C). Friedman v. Commissioner, 53 F.3d 523, 531-532 (2d Cir. 1995), affg. in part, revg. in part, and remanding T.C. Memo. 1993-549; Hayman v. Commissioner, 992 F.2d 1256 (2d Cir. 1993), affg. T.C. Memo. 1992-228. Petitioner argues that the "new" requirement renders relevant petitioner's university transcript and the other evidence she seeks to admit and that such relevance could not have been anticipated at the time of such trial. Petitioner admits, however, that the requirement for innocent spouse relief adopted by the Second Circuit had been articulated by other courts prior to the trial of the instant case. See, e.g., Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court.

We do not agree with petitioner that she could not have been aware of the relevance of the evidence she now seeks to introduce simply because the Court of Appeals for the Second Circuit, at the time the instant case was tried, had yet to issue its opinions requiring that a taxpayer's education level be taken into consideration. Moreover, petitioner contends that, even without such evidence, the record developed at the trial of the instant case is sufficient to support a finding that she did not know and had no reason to know of the existence of the

(continued...)

that petitioner has failed to satisfy all of the requirements for relief as an innocent spouse provided by section 6013(e) and has failed to satisfy all of the transitional rule requirements as well. Accordingly, we need not reconsider the holding of our prior Opinion that the deductions claimed on the returns for the taxable years in issue are "grossly erroneous items" within the meaning of section 6013(e)(2)(B).[9]

Our first consideration is whether, for taxable years 1980 and 1981, petitioner has established the requirements of section 6013(e)(1)(C) that, in signing each of the returns for those years, "she did not know, and had no reason to know," that a substantial understatement of tax exists as to each such return. Respondent contends that petitioner has failed to establish, inter alia, that she did not know and had no reason to know of the substantial understatements in issue when she signed the returns for the taxable years in issue, and that petitioner

---

[8](...continued)
substantial understatements in issue. We accordingly will not reopen the record to admit additional evidence with respect to the requirements of sec. 6013(e)(1)(C).

[9]
As to petitioner's allegation that respondent's counsel violated Rule 201 and rule 3.3(a)(3) of the Model Rules, the misconduct asserted by petitioner relates only to evidence potentially pertinent to the "grossly erroneous items" issue. Because we hold that petitioner is otherwise not entitled to relief under sec. 6013(e), and, because of such holding, do not reconsider our prior holding with respect to the "grossly erroneous items" issue, we need not, and we do not, address that allegation in disposing of the instant motion.

therefore is not entitled to relief as an innocent spouse. We agree.

The Court of Appeals for the Second Circuit, the court to which an appeal in the instant case would lie, interprets subsection 6013(e)(1)(C) as requiring a taxpayer to establish that "'she [or he] did not know and did not have reason to know that the deduction would give rise to a substantial understatement.'" Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), (quoting Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989), revg. an Oral Opinion of this Court), affg. T.C. Memo. 1992-228.

Turning to the facts of the instant case, respondent contends that petitioner knew that the deductions in issue would give rise to substantial understatements when she signed the returns for the taxable years in issue. Respondent relies primarily on the testimony of Robert Kraft to support such contention. During the trial of the instant case, Mr. Kraft testified that he had received a law degree from Georgetown University Law Center. At a subsequent hearing, Mr. Kraft admitted that he has never received a law degree. In light of Mr. Kraft's admission, we regard his testimony as inherently untrustworthy and, therefore, do not accept his testimony. Respondent also argues that, because petitioner was a stockbroker who had passed the "series seven" stockbroker examination prior to the time she signed the returns in issue, she must have been

exposed to the mechanics of commodities straddle transactions. Respondent, therefore, contends that petitioner knew that the deductions claimed on the returns for the taxable years in issue would give rise to substantial understatements. Nothing in the record, however, establishes that petitioner's studies or her work as a stockbroker exposed her to the intricacies of commodities straddle transactions.[10] Accordingly, we find that petitioner, when she signed the returns for the taxable years in issue, did not have actual knowledge that the deductions would give rise to the substantial understatements.

Even if a taxpayer does not have actual knowledge that deductions claimed on a return would give rise to a substantial understatement, a taxpayer who has reason to know of such an understatement is not entitled to innocent spouse relief. Sec. 6013(e)(1)(C). At the trial of the instant case, petitioner admitted that she signed the returns for the taxable years in issue without reviewing them. Nevertheless, she is charged with constructive knowledge of their contents. Hayman v. Commissioner, supra at 1262. Petitioner was educated and should

---

[10] At trial, respondent offered the testimony of several witnesses in an attempt to establish that the brokerage firm at which petitioner was employed during 1980 and 1981 routinely taught its stockbroker trainees about commodities straddle transactions. The testimony of respondent's witnesses, however, does not establish that petitioner received detailed instruction concerning commodities straddle transactions as a part of her training.

have realized her responsibility for reviewing the returns she signed.  Consequently, petitioner's failure to review returns that she signed under penalties of perjury cannot be excused. Terzian v. Commissioner, 72 T.C. 1164, 1170-1171 (1979).

The Court of Appeals for the Second Circuit has held that the magnitude of the deductions claimed on a return may give rise to a duty to inquire as to the propriety of the deductions. Friedman v. Commissioner, 53 F.3d 523, 531 (2d Cir. 1995), (citing Hayman v. Commissioner, supra), affg. in part and revg. in part and remanding T.C. Memo. 1993-549.  The duty of inquiry generally arises with respect to "tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability".  Hayman v. Commissioner, supra at 1262.

In the instant case, we believe that even a cursory review of the returns for the taxable years in issue would have alerted petitioner to the high probability that such returns contained substantial understatements.  The 1980 return reported a gain of $408,097 on Schedule D that was offset by a loss of $407,884 reported on Schedule E, which included a loss of $508,045 from TSM Associates.  That return reported adjusted gross income of only $8,055 for the taxable year 1980, and tax due of $240.[11]

---

[11]

During 1980, Mr. Crowley earned $122,683 in commissions from Sinclair Securities Company.

The 1981 return, which was filed untimely on January 31, 1983, reported a gain of $697,896 on Schedule D that was offset by a loss of $679,327 reported on Schedule E, which included a loss of $413,765 from TSM Associates and a loss of $399,489 from APEX Associates. That return reported adjusted gross income of $90,658, and tax due of $13,980.[12] Both the income and deductions with respect to Mr. Crowley's commodities straddle transactions reported on the 1980 and 1981 returns were larger than the other income and deductions reported by Mr. Crowley and petitioner. Under such circumstances, petitioner had a duty to look into the propriety of the deductions taken on the returns in issue, a duty she has failed to satisfy in the instant case.[13] Id. Petitioner cannot obtain the benefits of section 6013(e) by simply turning a blind eye to facts that would reasonably put her on notice that further inquiry would need to be made. Bokum v. Commissioner, 94 T.C. 126, 148 (1990), affd. 992 F.2d 1132 (11th Cir. 1993). As we have previously noted, section 6013(e) is

---

[12]
During 1981, Mr. Crowley earned $148,141 in commissions from Sinclair Securities Company.

[13]
Petitioner, however, contends that the tax returns for the taxable years in issue "indicated a roll of income from prior years to future years, leading an objective observer to conclude that any disallowance would wipe out all income and deductions relating to the transactions resulting in little or no net tax effect." Such a consideration is not a substitute for the inquiry required by the information disclosed on the returns in issue.

designed to protect the innocent, not the intentionally ignorant. Shannon v. Commissioner, T.C. Memo. 1991-207.

In deciding whether petitioner "had reason to know" of the substantial understatements when she signed the returns, we also take into account the factors that the Court of Appeals for the Second Circuit has held are to be considered in making such a decision: (1) The spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared with the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning their finances. Friedman v. Commissioner, supra at 531-532 (citing Hayman v. Commissioner, supra at 1261). The foregoing factors are considered "because, ordinarily, they predict what a prudent person would realize regardless of the other spouse's evasiveness or deceit." Bliss v. Commissioner, 59 F.3d 374, 379 (2d Cir. 1995), affg. T.C. Memo. 1993-390.

Applying such factors to the facts of the instant case, we conclude that petitioner had reason to know of the substantial understatements when she signed the returns for the taxable years in issue. Petitioner was a college-educated stockbroker who had passed the "series seven" examination. She was a former life insurance agent. Petitioner's involvement in the couple's business and financial affairs was also significant. Petitioner

knew that Mr. Crowley was a "commodities trader". She traveled with him to several commodities seminars, where she attempted to attract clients for her husband at the hospitality suites provided by his employer after those seminars. They routinely entertained Mr. Crowley's clients at their apartment. Petitioner and Mr. Crowley lived lavishly during 1980 and 1981, the years for which petitioner seeks relief as an innocent spouse. They frequently dined at expensive restaurants during those years. During 1980, they vacationed in Canada, Vermont, and Florida. Mr. Crowley's American Express bill for that year was approximately $90,000, and a substantial portion of that amount was charged by petitioner. During 1981, petitioner and Mr. Crowley rented a two-bedroom apartment in Manhattan for approximately $1,400 or $1,500 per month and garaged Mr. Crowley's BMW automobile for approximately $250 to $300 per month. Finally, there is no evidence in the record that shows that Mr. Crowley was evasive or deceitful about their finances or that he attempted to conceal the fact that he had engaged in commodities straddle transactions.[14] Based on the record in the

---

[14] The Court of Appeals for the Second Circuit recently stated:

> According to the dissent, the petitioner should be deemed innocent because she is guileless and may not have understood why * * * [her ex-husband] should have reported his full income. This misapprehends the nature of innocence in the context of this statute. Innocent people pay taxes; the obligation to pay taxes

(continued...)

instant case, we conclude that, at the time she signed the returns for the taxable years in issue, petitioner had reason to know of the substantial understatements in issue.

Petitioner contends that the Court of Appeals' decision in Friedman v. Commissioner, supra, "limits" Hayman v. Commissioner, supra, with respect to the "reason to know" requirement of subsection 6013(e)(1)(C).  Petitioner interprets the Court of Appeals' decision in Friedman v. Commissioner, supra, to mean that the mere fact that a large deduction was claimed from an investment partnership does not cause the alleged innocent spouse to have reason to know of the substantial understatement, where the spouse relied upon representations from her husband that such deduction was proper and where the taxpayer was not very sophisticated in financial matters.  According to petitioner, when she signed the tax returns for the taxable years in issue, she was young and very unsophisticated in financial matters, having just arrived from Canada.

---

[14](...continued)
> rests on liability, not guilt.  An innocent spouse within the meaning of [sec. 6013(e)] is innocent vis-a-vis a guilty spouse whose income is concealed from the innocent and spent outside the family.  [Bliss v. Commissioner, 59 F.3d 374, 380 n.3 (2d Cir. 1995), affg. T.C. Memo. 1993-390.]

As in Bliss v. Commissioner, supra, there is no evidence in the record that suggests that Mr. Crowley was evasive or deceitful with respect to their finances or that he attempted to conceal the fact that he had engaged in commodities straddle transactions.

We disagree with petitioner's interpretation of Friedman v. Commissioner, supra, as well as her characterization of herself as unsophisticated with respect to financial matters.  In Friedman v. Commissioner, supra, the Court of Appeals applied the knowledge standard that it adopted in Hayman v. Commissioner, supra.  In Friedman v. Commissioner, supra, however, the taxpayer was a "housewife and unemployed former secretary with a high school education possessing only a rudimentary grasp of the simplest tax principles."  Friedman v. Commissioner, 53 F.3d at 530.[15]  The Court of Appeals held that the taxpayer in Friedman v. Commissioner, supra at 531, satisfied her duty of inquiry when she asked her former husband about the deductions that gave rise to the understatements, and he told her that "they resulted from a tax shelter and for her not to worry."  In so holding, the Court of Appeals relied on the fact that the taxpayer knew that the returns in question had been prepared by an accountant, who was also a trusted personal friend of the family, and that the tax shelter had been recommended to her former husband by a tax expert, whose reputation she was familiar with through her past

---

[15]  The facts of the instant case are more analogous to those of Hayman v. Commissioner, 992 F.2d 1256, 1258 (2d Cir. 1993), affg. T.C. Memo. 1992-228, which involved a "highly-paid, college-educated vice-president and merchandising director employed by the well-known women's clothing chain, Ann Taylor".  Friedman v. Commissioner, 53 F.3d 523, 530 (2d Cir. 1995), (citing Hayman v. Commissioner, supra at 1258), affg. in part and revg. in part T.C. Memo. 1993-549.

employment in her husband's business.

Petitioner, unlike the taxpayer in Friedman v. Commissioner, supra, was a college-educated stockbroker when she signed the returns in issue, who admits that she failed to review those returns prior to signing them. Petitioner's failure to review the returns before signing them was apparently deliberate because nothing in the record indicates that she could not have reviewed them had she wished to do so. Petitioner claims that she signed the returns because she trusted Mr. Crowley. That trust alone, however, does not eliminate a spouse's duty to inquire when a perusal of the return would indicate that further inquiry is necessary. Hayman v. Commissioner, supra at 1262; Stevens v. Commissioner, 872 F.2d 1499, 1507 (11th Cir. 1989), affg. T.C. Memo. 1988-63. Consequently, we hold that petitioner has failed to prove that she did not know and had no reason to know that the deductions claimed on the returns for the taxable years in issue would give rise to substantial understatements.[16]

Turning to petitioner's contention that she is eligible for relief as an innocent spouse under the transitional rule,[17] we

---

[16]

Our holding renders it unnecessary to consider whether petitioner has satisfied the remaining contested requirement of sec. 6013(e).

[17]

In Park v. Commissioner, 25 F.3d 1289, 1300 (5th Cir. 1994), affg. T.C. Memo. 1993-252, the Court of Appeals for the Fifth Circuit addressed the scope of the transitional rule as follows:
(continued...)

note that petitioner could have raised the issue of her eligibility for relief under that provision in the prior proceedings in the instant case. We note that TAMRA, which included the transitional rule, was enacted November 10, 1988, 102 Stat. 3812, well before the instant case was tried. As noted above, it is the policy of this Court to try all of the issues raised in a case in one proceeding in order to avoid piecemeal and protracted litigation. Alexander v. Commissioner, 95 T.C. at 469. In the interest of judicial efficiency, we generally will not grant a motion for reconsideration to resolve issues that could have been raised during prior proceedings. CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982); Robin Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), affd. on this issue, 510 F.2d 43, 45 n.1 (1st Cir. 1975).

---

[17](...continued)
a reading of the transitional rule in conjunction with section 6013(e) reveals that Congress did intend for the transitional rule to provide broader innocent spouse relief under limited circumstances to a certain class of spouses--i.e., those who filed joint returns with substantial understatements prior to January 1, 1985, and whose marriages had since terminated. See Thompson, 63 T.C.M. (CCH) at 2884. For such spouses, Congress eliminated the requirement under section 6013(e)(1)(D), which required a spouse to show that it would be inequitable to hold her liable for the understatement. In its place, Congress instituted a "net worth" test, relieving the spouse from liability if she met the "no reason to know" requirement and had a net worth of less than $10,000 immediately after the termination of the marriage. Thus, under the transitional rule, unlike under section 6013(e), Congress afforded innocent spouse relief to a spouse who had benefitted from an erroneous deduction as long as after the termination of the marriage her net worth was less than $10,000.

We note that the transitional rule does provide, in pertinent part, the following:

"(D) without regard to any determination before October 21, 1988, the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such an understatement,

\*       \*       \*       \*       \*       \*       \*

notwithstanding any law or rule of law (including res judicata), the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement, * * *.  [TAMRA sec. 6004, 102 Stat. 3685; emphasis added.]

The Court of Appeals for the Fifth Circuit has found that the purpose of the foregoing language is to enable a taxpayer, who meets the requirements of the transitional rule, to be relieved of liability for an understatement as an innocent spouse notwithstanding a decision as to the taxpayer's liability prior to the enactment of the transitional rule.  Park v. Commissioner, 25 F.3d 1289, 1300 (5th Cir. 1994), affg. T.C. Memo. 1993-252. Similarly, another court has concluded that the foregoing provisions were intended to make the relief afforded by the transitional rule "available to a person who did not have its benefit when her case was determined".  In re Freytag, 173 Bankr. 330, 334 (N.D. Tex. 1994).  We, however, do not need to decide whether the foregoing language of the transitional rule requires us to resolve the question whether petitioner qualifies for relief as an innocent spouse under the transitional rule where it was first raised in a motion for reconsideration and could have

been raised in prior proceedings.  Even were we to consider petitioner's claim for relief under the provisions of the transitional rule, we would nevertheless conclude that she does not satisfy its requirements.

As with the requirements for relief under section 6013(e), a taxpayer must establish that all of the conditions imposed by the transitional rule are satisfied in order to be eligible for relief under that rule.  Park v. Commissioner, supra at 1300.  We have held above that petitioner did not satisfy the knowledge requirement of section 6013(e)(1)(C), in that she did not establish that, in signing the returns in issue, she "did not know, and had no reason to know" of the understatements in issue. Recently, in Park v. Commissioner, supra at 1300, the Court of Appeals for the Fifth Circuit concluded that

> The "did not know, and had no reason to know" language of the transitional rule virtually mirrors that of section 6013(e), suggesting that Congress intended the "no reason to know" requirement of both provisions to have the same meaning.

Consequently, in order to obtain relief under the transitional rule, petitioner must, under subparagraph (D) of that rule, make the same showing that she is required to make under section 6013(e)(1)(C).  Petitioner has failed show that she satisfies the test of subsection 6013(e)(1)(C) and therefore would also fail to establish that she satisfies the test of subparagraph (D) of the transitional rule.  Accordingly, petitioner could not find relief as an innocent spouse under the provisions of the transitional rule.

To reflect  the foregoing,[18]

<u>Appropriate orders will</u>

---

18

Although we sympathize with petitioner's plight, we are guided by the statement we made in <u>Sonnenborn v. Commissioner</u>, 57 T.C. 373, 380-381 (1971):

The filing of a joint return is a highly valuable privilege to husband and wife since the resulting tax liability is generally substantially less than the combined taxes that would be due from both spouses if they had filed separate returns.  This circumstance gives particular emphasis to the statutory rule that liability with respect to tax is joint and several, regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other, for both spouses ordinarily benefit from the reduction in tax that ensues by reason of the joint return.  However, some highly inequitable results were called to the attention of Congress, particularly where a wife had been divorced or separated or abandoned after the tax year, where she was saddled with a disproportionately high tax liability as a consequence of having filed a joint return, where such liability grew out of income attributable only to the husband, unknown to the wife, and where she had not enjoyed any benefit therefrom. It was in an effort to eliminate the unfairness of the joint and several liability provisions in such circumstances that section 6013(e) was enacted.  To be sure, section 6013(e) is not limited to precisely such narrow situations.  But it must be kept in mind that Congress still regards joint and several liability as an important adjunct to the privilege of filing joint returns, and that if there is to be any relaxation of that rule the taxpayer must comply with the carefully detailed conditions set forth in section 6013(e).  [Fn. ref. omitted]

In the instant case, we are, of course, bound to apply the law that Congress enacted.  If the result we reach seems harsh, the remedy must lie with Congress, which is the body that has the power to relax the requirements for obtaining relief as an innocent spouse.

<u>be issued</u>.