T.C. Summary Opinion 2005-127

UNITED STATES TAX COURT

TIMOTHY J. GLENN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7249-04S.                    Filed August 16, 2005.

Timothy J. Glenn, pro se.

Tom D. Yang, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $16,584 in the joint Federal income tax of petitioner and petitioner's former spouse, Carolyn A. Glenn (Ms. Glenn),[1] and an accuracy-related penalty of $3,317 pursuant to section 6662(a) for the taxable year 2001.

After concessions, the issues for decision are: (1) Whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) for the taxable year 2001; and if so, (2) whether petitioner is entitled to relief from joint and several liability for the tax deficiency and accuracy-related penalty pursuant to section 6015.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Hoffman Estates, Illinois, on the date the petition was filed in this case.

Petitioner and Ms. Glenn were married on July 8, 1989. For taxable year 2001, petitioner and Ms. Glenn filed a timely joint Federal income tax return. During the year at issue, petitioner and Ms. Glenn were married and resided in the same household; however, they occupied separate rooms in the household. Their

[1]Carolyn A. Glenn's case, docket No. 9199-04S, was tried immediately after petitioner's case on this Court's Chicago, Illinois, session beginning Nov. 29, 2004. These cases were not consolidated because of an objection by Carolyn A. Glenn.

2001 Federal income tax return was signed and dated by both petitioner and Ms. Glenn on April 10, 2002. Both petitioner and Ms. Glenn executed the 2001 return voluntarily. Petitioner and Ms. Glenn were divorced on November 13, 2002. Their judgment for dissolution of marriage provided:

> That each party shall be responsible for the payment of all credit card bills and all other debts in his or her name alone. Each shall hold the other harmless and indemnify the other from the respective indebtedness.

However, the judgment for dissolution of marriage did not address payment of joint liabilities.

On their jointly filed 2001 tax return, petitioner and Ms. Glenn reported wage income of $157,301, interest income of $350, and total pension and annuity income of $165,838.[2] Petitioner and Ms. Glenn reported adjusted gross income of $323,489 and claimed deductions of $31,811 on Schedule A, Itemized Deductions. Their 2001 income tax return reported a total tax of $86,293 and a net amount owed of $21,438 after reducing their total tax by the amount of income tax withheld.

During taxable year 2001, petitioner earned wages from two sources: $58,502.61 from Ceridian Corp. from which $11,122.24 of Federal income tax was withheld; and $74,219.76 from Kronos, Inc., from which $14,984.69 of Federal income tax was withheld.

---

[2]This amount is rounded to the nearest dollar.

During taxable year 2001, Ms. Glenn earned wages of $24,577.99 from Community Unit School District #220, and Federal income tax of $1,704.43 was withheld. Also during tax year 2001, petitioner and Ms. Glenn received pension and annuity income of $165,838 from petitioner's Fidelity Investments account from which $33,167.58 of Federal income tax was withheld.

The $165,838 reported as pension and annuity income during taxable year 2001 by petitioner and Ms. Glenn was a distribution from petitioner's section 401(k) plan maintained by his employer, Kronos, Inc., through T. Rowe Price. Petitioner had been employed at Kronos, Inc., since 1988. This distribution was made approximately in June of 2001. Petitioner's reasons for requesting the distribution were that he was leaving Kronos, Inc., and he and Ms. Glenn were considering divorce and wanted to pay off outstanding bills to make their divorce "as simple as possible".

Petitioner received a check from Fidelity Investments in the amount of $132,670.30.[3] In August of 2001, petitioner deposited $123,700 into his and Ms. Glenn's joint checking account with Harris Trust & Savings Bank.[4] Petitioner could not recall why

---

[3]This amount represents the total sec. 401(k) distribution of $165,838, less Federal income tax withheld of $33,167.58.

[4]Petitioner transferred $100,000 from the joint checking account into a joint savings account which was also held with Harris Trust & Savings Bank. Petitioner transferred money from
(continued...)

the whole amount of $132,670.30 was not deposited in the joint checking account. Petitioner and Ms. Glenn had opened this joint checking account before 1990. Petitioner also deposited his paychecks in the joint checking account. However, Ms. Glenn did not deposit her paychecks into the joint checking account; instead, she had a separate personal checking account where she deposited her paychecks.

During the period from July 27 through December 31, 2001, petitioner wrote checks totaling $66,082.07 drawn on the Harris Trust & Savings Bank joint checking account as follows:

| Date | Check No. | Description | Amount |
|------|-----------|-------------|--------|
| 7/27/2001 | 136 | Payable to: Discover | $2,700.00 |
| 8/1/2001 | 137 | Payable to: Citibank | 3,450.55 |
| 8/21/2001 | 147 | Payable to: First USA | 23,000.00 |
| 9/5/2001 | 164 | Payable to: Citibank | 6,938.63 |
| 9/5/2001 | 165 | Payable to: Union Federal | 27,701.51 |
| 9/29/2001 | 185 | Payable to: First USA | 1,215.40 |
| 10/24/2001 | 204 | Payable to: First USA | 1,075.98 |
| Total | | | 66,082.07 |

Both petitioner's and Ms. Glenn's names were on their credit cards financed through Discover, Citibank, and First USA, and both of their names were on the home mortgage note they received from Union Federal. Therefore, petitioner and Ms. Glenn were jointly liable for the credit card debts and home mortgage which were paid by the above checks.

---

[4](...continued)
the savings account to the checking account, as needed, to cover checks written on and withdrawals from the checking account. Petitioner used the savings account to earn interest while the large sum of money was not being used.

From the record, the remaining $57,617.93, which was deposited into the joint savings and checking accounts, was not readily traceable. However, on November 28, 2001, the balance in the joint savings account was $57,878.32.

As stated previously, petitioner and Ms. Glenn reported pension and annuity income of $165,838 on their joint Federal income tax return for taxable year 2001. However, they did not report on their 2001 joint Federal income tax return the 10-percent early withdrawal additional tax imposed by section 72(t).

Petitioner concedes that the total amount of $165,838 of pension and annuity income reported on the return is subject to the 10-percent additional tax under section 72(t) on early withdrawals. After the date of the notice of deficiency, petitioner tendered to respondent payment of $8,267, approximately one-half of the amount of the 10-percent additional tax.

Petitioner contends that he is not liable for the accuracy-related penalty pursuant to section 6662(a) with respect to the underpayment attributable to the unreported 10-percent additional tax under section 72(t), because the underpayment was a result of an "honest" mistake by his and Ms. Glenn's tax return preparer. In addition, petitioner requests relief pursuant to section 6015 from liability for one-half of the 10-percent additional tax

attributable to the early withdrawal, and the accuracy-related penalty imposed under section 6662(a).

## Discussion

Except as otherwise provided in section 6015, petitioner bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004). Respondent has the burden of production with respect to the accuracy-related penalty, however. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

## 1. Accuracy-Related Penalty

In the notice of deficiency, respondent determined that petitioner and Ms. Glenn are liable for an accuracy-related penalty pursuant to section 6662(a) with respect to the underpayment attributable to the unreported 10-percent additional tax under section 72(t).

Section 6662(a) imposes a 20-percent penalty on the portion of any underpayment attributable to any of various factors, one of which is negligence or disregard of rules or regulations. Sec. 6662(b)(1). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-4(b)(1), Income Tax Regs. As relevant to this case, the penalty also applies to any portion of the underpayment that is

attributable to any substantial understatement of income tax. Sec. 6662(b)(2). There is a "substantial understatement of income tax" if the amount of the understatement exceeds 10-percent of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1).

As previously stated, section 7491(c) requires the Commissioner to carry the burden of production because he seeks to impose the penalty. Higbee v. Commissioner, supra. Once the burden of production is met, the taxpayer must come forward with sufficient evidence that the penalty does not apply. Id. at 447.

Petitioner argues that the underpayment attributable to the unreported 10-percent additional tax under section 72(t) was a result of an "honest" mistake by his and Ms. Glenn's tax return preparer. Petitioner and Ms. Glenn reported a tax liability of $86,293 on their 2001 tax return. Respondent determined that petitioner and Ms. Glenn's corrected tax liability was $102,877. The difference is fully attributable to petitioner and Ms. Glenn's omission of the additional tax under section 72(t) of $16,584. Respondent has satisfied his burden of showing that the understatement of tax exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's

position and that the taxpayer acted in good faith with respect to that portion.  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year.  Id.  Circumstances that may indicate that a taxpayer acted with reasonable cause and in good faith include "an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.

Further, in some instances, taxpayers can avoid the accuracy-related penalty if they have furnished all of the relevant information to a tax professional or return preparer and relied on that person's professional advice as to the proper tax treatment.  Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Pessin v. Commissioner, 59 T.C. 473, 489 (1972).  However, any reliance upon professional tax advice must be reasonable.  Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011, 1017 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

It is clear to the Court that petitioner is unsophisticated as to tax matters.  After providing his and Ms. Glenn's tax

return preparer with all their relevant tax information, they relied reasonably and in good faith on the tax preparer to prepare an accurate tax return. We conclude that petitioner acted with reasonable cause and good faith as to the underpayment resulting from the additional tax in issue. Accordingly, we hold that petitioner is not liable for the accuracy-related penalty pursuant to section 6662(a).

2. Relief From Joint and Several Liability Pursuant to Section 6015

Under present law, there are three primary jurisdictional bases upon which this Court may review a claim for relief from joint and several liability. First, a claim may be raised as an affirmative defense in a petition for redetermination of a deficiency filed pursuant to section 6213(a). Butler v. Commissioner, 114 T.C. 276, 287-288 (2000). A second basis upon which we may exercise jurisdiction is contained in section 6015(e). This provision allows a spouse who has requested relief to petition the Commissioner's denial of relief or to petition the Commissioner's failure to make a timely determination. Such cases are referred to as "stand alone" cases, in that they are independent of any deficiency proceeding. Fernandez v. Commissioner, 114 T.C. 324, 329 (2000). A third situation where we may exercise jurisdiction to determine relief from joint and several liability is where the issue is properly raised in a

collection proceeding under sections 6320 and 6330.[5]  In the instant case, petitioner raised his claim for relief from joint and several liability as an affirmative defense in a petition for redetermination of a deficiency filed pursuant to section 6213(a).

A.    Section 6015

As a general rule, married taxpayers may elect to file a joint Federal income tax return.  Sec. 6013(a).  After making the election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year.  Sec. 6013(d)(3).  In certain situations, however, a joint return filer can avoid such joint and several liability by qualifying for relief therefrom under section 6015.[6]

Section 6015 provides three avenues for obtaining relief to a taxpayer who has filed a joint return:  (1) Section 6015(b) provides full or apportioned relief with respect to understatements of tax attributable to certain erroneous items on

---

[5]Additionally, we have held that we may address a claim for relief from joint and several liability pleaded as an affirmative defense in a matter properly before this Court under sec. 6404 (relating to the Commissioner's determination not to abate interest).  Estate of Wenner v. Commissioner, 116 T.C. 284, 288 (2001).

[6]Sec. 6015 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201, 112 Stat. 734.  Before the enactment of sec. 6015, relief from the imposition of joint and several liability for spouses filing joint returns was available under sec. 6013(e).

the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) (potentially the broadest of the three avenues) confers upon the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c).

Petitioner requests relief pursuant to section 6015 from liability for one-half of the 10-percent additional tax attributable to the early withdrawal.  In addition, petitioner argues that his and Ms. Glenn's judgment for dissolution of marriage required each party to pay half of the liabilities that were incurred during the marriage.[7]  We will consider petitioner's request for relief under section 6015 as an election under section 6015(b), (c), and (f).

B.    Section 6015(b) Analysis

Section 6015(b) provides, in pertinent part as follows:

> SEC. 6015(b).  Procedures For Relief From Liability Applicable to All Joint Filers.--
>
> > (1) In general.--Under procedures prescribed by the Secretary, if–
> >
> > > (A) a joint return has been made for a taxable year;

---

[7]We need not discuss petitioner's claim regarding the judgment for dissolution of marriage because such a claim is a State matter.

(B) on such return there is an understatement of tax attributable to erroneous items of one individual filing the joint return;

(C) the other individual filing the joint return establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement;

(D) taking into account all the facts and circumstances, it is inequitable to hold the other individual liable for the deficiency in tax for such taxable year attributable to such understatement; * * *

\* \* \* \* \* \* \*

then the other individual shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such understatement.

The requirements of section 6015(b)(1) are stated in the conjunctive. Accordingly, a failure to meet any one of them prevents a requesting spouse from qualifying for the relief offered therein. Alt v. Commissioner, 119 T.C. at 313.

On the basis of the facts and circumstances of the present case, we find that petitioner was well aware of the distribution of $165,838 from his own section 401(k) account through Fidelity Investments. Petitioner may not claim that he did not have knowledge of the unreported 10-percent early withdrawal additional tax imposed by section 72(t), because of his and Ms. Glenn's tax return preparer's "honest" mistake.

Taxpayers seeking to prove that they had no knowledge or reason to know of an item giving rise to an understatement of tax

must demonstrate, at a minimum, that they fulfilled a "duty of inquiry" with respect to determining whether their correct tax liability was reported on the return for the year for which they seek relief. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Butler v. Commissioner, 114 T.C. at 284. When taxpayers fail to fulfill their duty of inquiry, they are ordinarily charged with constructive knowledge of any understatements on their returns. See Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Crowley v. Commissioner, T.C. Memo. 1995-551, affd. without published opinion sub nom. Cockrell v. Commissioner, 116 F.3d 1472 (2d Cir. 1997); Cohen v. Commissioner, T.C. Memo. 1987-537 (the provisions providing relief from joint and several liability are "designed to protect the innocent, not the intentionally ignorant"). Petitioner has not satisfied his burden here.

Further, petitioner has not satisfied the requirement of section 6015(b)(1)(B) because he cannot show that the understatement of tax is attributable to an erroneous item of one of the individuals filing the joint return. As previously discussed, the understatement of tax is attributable to petitioner and Ms. Glenn's omission of the additional tax under section 72(t).

Moreover, on the basis of the entire record and petitioner's enjoyment of benefits stemming from the distribution, we cannot conclude that it would be inequitable to hold petitioner liable for the deficiency in tax at issue in this case. Petitioner is not entitled to relief under section 6015(b).

C.   Section 6015(c) Analysis

Section 6015(c) grants relief from joint and several tax liability for electing individuals who filed a joint return and are no longer married, are legally separated, or are living apart. Congress intended that such relief from liability be available for tax attributable to items of which the electing spouse had no knowledge. S. Rept. 105-174, at 55 (1998), 1998-3 C.B. 537, 591. Generally, this type of relief treats spouses, for purposes of determining tax liability, as if separate returns had been filed. Sec. 6015(d)(3)(A); Grossman v. Commissioner, 182 F.3d 275, 278 (4th Cir. 1999), affg. T.C. Memo. 1996-452; Charlton v. Commissioner, 114 T.C. 333, 342 (2000); Rowe v. Commissioner, T.C. Memo. 2001-325. The allocation, however, is not permitted if the Secretary shows by a preponderance of the evidence that the electing individual had "actual knowledge, at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual". Sec. 6015(c)(3)(C); Culver v. Commissioner,

116 T.C. 189, 194-195 (2001); <u>Cheshire v. Commissioner</u>, 115 T.C. 183, 193-194 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

Respondent argues that petitioner had actual knowledge of the unreported 10-percent additional tax under section 72(t) since he received the check for the distribution, personally used the proceeds to pay off debts for which he and Ms. Glenn were jointly responsible, and signed the joint Federal income tax return without making any inquiry as to whether the tax reported was correct.

In the present case, as in the case of a disallowed deduction, we find that actual knowledge is present if the taxpayer had actual knowledge of the factual circumstances which led to the 10-percent additional tax. See <u>King v. Commissioner</u>, 116 T.C. 198, 204 (2001). Knowledge of the tax consequences resulting from the factual circumstances is not required. <u>Id.</u> at 203-204. The Commissioner bears the burden of proving that the taxpayer requesting section 6015(c) relief had the relevant actual knowledge. Sec. 6015(c)(3)(C); <u>King v. Commissioner</u>, <u>supra</u> at 204.

Petitioner is not entitled to relief from joint and several liability under section 6015(c). As discussed above, petitioner was fully aware of all the underlying factual circumstances concerning the distribution from his own section 401(k) plan. See <u>King v. Commissioner</u>, <u>supra</u>. Consequently, petitioner had

actual knowledge of the factual basis for the 10-percent additional tax pursuant to section 72(t), and he cannot rely on ignorance of the law for relief from liability.  Mitchell v. Commissioner, 292 F.3d 800, 803-806 (D.C. Cir. 2002), affg. T.C. Memo. 2000-332.  Regardless of whether the taxpayer "possesses knowledge of the tax consequences of the item at issue, * * *[he] is considered as a matter of law to have reason to know of the * * * understatement and thereby is effectively precluded from establishing to the contrary."  Mitchell v. Commissioner, supra at 804.

D.    Section 6015(f) Analysis

Therefore, the only remaining opportunity for relief available to petitioner is section 6015(f).  Section 6015(f) provides as follows:

> SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--
>
>> (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and
>>
>> (2) relief is not available to such individual under subsection (b) or (c),
>
> the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2003-61, 2003-2 C.B. 296,[8] to

---

[8]This revenue procedure superseded Rev. Proc. 2000-15, 2000-
(continued...)

be considered in determining whether an individual qualifies for relief under section 6015(f).  Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, lists seven conditions which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298, lists nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid income tax liability or deficiency, and full or partial equitable relief under section 6015(f) should be granted.  Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298, provides that the following factors are relevant to whether the Commissioner will grant equitable relief:  (1) Marital status, (2) economic hardship, (3) knowledge or reason to know, (4) the nonrequesting spouse's legal obligation, (5) significant benefit, (6) compliance with income tax laws, (7) abuse, and (8) mental or physical health.  Further, Rev. Proc. 2003-61, supra, provides that no single factor will be

_____

[8](...continued)
1 C.B. 447, and is effective either for requests for relief filed on or after Nov. 1, 2003, or for requests for which no preliminary determination letter was issued as of Nov. 1, 2003. In the present case, the request for relief was still pending as of Nov. 1, 2003, and the preliminary determination letter was issued on Dec. 19, 2003; therefore, Rev. Proc. 2003-61, 2003-2 C.B. 296, is applicable in the present situation.

determinative, but that all relevant factors, regardless of whether the factor is listed in Rev. Proc. 2003-61, sec. 4.03, will be considered and weighed.

Petitioner executed the 2001 return voluntarily. The distribution which led to the 10-percent additional tax pursuant to section 72(t) was a distribution from petitioner's own section 401(k) plan. Petitioner had actual knowledge of the factual basis for the 10-percent additional tax. Petitioner personally used the proceeds from the distribution to pay for living expenses incurred by him, Ms. Glenn, and their children. Also, petitioner used the proceeds from the distribution to pay credit card debts and a second mortgage, for which petitioner and Ms. Glenn were jointly liable.

Furthermore, we find no basis for concluding that petitioner would suffer undue financial hardship in being liable for the additional unpaid 2001 tax liability.

While petitioner may have a claim to indemnity under State law for half of the payment of the additional tax liability incurred because of the 10-percent additional tax, we find that no factors considered support the conclusion that petitioner is entitled to relief under section 6015(f), and petitioner's request for relief pursuant to section 6015 will be denied.

Reviewed and adopted as the report of the Small Tax Case Division.

An appropriate decision will be entered for respondent with respect to the deficiency and for petitioner with respect to the accuracy-related penalty under section 6662(a).